## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

ADAM POLK,                              )
                                        )
            **Plaintiff,**              )
                                        )
v.                                      )      **Case No. 12-CV-0557-CVE-TLW**
                                        )
TEKSYSTEMS, INC.,                       )
                                        )
                                        )
            **Defendant.**              )

## <u>OPINION AND ORDER</u>

Now before the Court are the following motions: Defendant's Motion in Limine, and Brief in Support (Dkt. # 46); Defendant's Motion for Summary Judgment, and Brief in Support (Dkt. # 47); Defendant's Unopposed Motion to Move Trial Date (Dkt. # 51); Defendant's Motion to Strike Plaintiff's Claim for Damages Not Disclosed in Discovery, and Brief in Support (Dkt. # 55); Defendant TEKsystems, Inc.'s Unopposed Motion to Set Trial for a Date Certain (Dkt. # 83); and Defendant's Objections to Plaintiff's Deposition Counter-Designations (Dkt. # 84). Defendant moves for summary judgment on plaintiff's claims of disability discrimination on the ground that there is no evidence that defendant knew that plaintiff claimed to be a person with disability (Dkt. # 47). Plaintiff has filed a response (Dkt. # 70) in opposition to defendant's motion, and defendant has filed a reply (Dkt. # 76). By direction of the Court, the parties have also filed supplemental briefing on the issue of whether plaintiff was a person with a disability as that term is defined in the Americans with Disabilities Act, 42 U.S.C. § 12010 <u>et</u> <u>seq.</u> (ADA). Dkt. ## 80, 81.

# I.

TEKsystems, Inc. (TEK) states that it "is in the business of supplying information technology staffing to its clients on a contract basis." Dkt. # 47, at 6. Adam Polk began working at TEK on May 23, 2005, and he was initially hired to work as a recruiter. As a recruiter, Polk worked under an account manager, and he was not responsible for generating business. Dkt. # 47-1, at 22. Polk was later promoted to the position of account manager. Dkt. # 47-1, at 8. Account managers interfaced with clients of TEK to find potential new employees to fill specific needs identified by the clients. Dkt. # 70-3, at 3-4. As an account manager, a recruiter could be assigned to work with Polk to assist with finding the "resources" or new employees to fill orders from clients, but recruiters were assigned to account managers depending on the needs of the account managers and some account managers might have no recruiters assigned to them. Dkt. # 47-1, at 11; Dkt. # 76-1, at 4. During the course of Polk's employment, he did have recruiters assigned to work under him at various times, but there were times that he did not have a recruiter. Dkt. # 70-3, at 27-31. There is no evidence in the summary judgment record that Polk ever requested a recruiter or additional recruiters to assist him with his workload.

When Polk applied for a position with TEK, he completed an employee biographical information sheet and did not represent that he had a disability. Dkt. # 47-2. Polk claims that he thought that he would be treated differently if he disclosed that he had a mental health disability, and he had never told any previous employer that he may have had a disability. Dkt. # 47-1, at 15-16. Polk stated in his deposition that "[m]ental health disabilities aren't something that you typically advertise to people." Id. at 16. Even though he did not disclose any disabilities to TEK, Polk testified in his deposition that he was diagnosed with an anxiety disorder and depression in 1999.

2

Dkt. # 70-3, at 13.   In December 2009, Polk sent an e-mail to TEK's Director of Business Operations, David Izett, stating that he suffered from seasonal depression, but Polk stated that he was "fine" and he did not want anyone to worry about him.  Dkt. # 70-1, at 2.  In February 2010, Polk sent an e-mail to Izett claiming that he had seen a therapist for depression following the death of his mother, and the therapist believed that Polk was suffering from "Orphan's Syndrome."  Dkt. # 70-2.  Polk's father had died when he was a child and, according to an article attached to Polk's e-mail, the loss of both parents could cause certain physical and emotional symptoms that would make it difficult for a person to function until the grieving process was completed.  Id. at 2-3.  However, Polk stated that he not suffering from severe depression that affected his job performance and that he was "more stressed and overwhelmed than depressed."  Id.  Izett recalled that Polk was upset after his mother's death, but Polk did not claim that he suffered from a mental health disability or any specific mental impairment.  Dkt. # 47-3, at 1.   Polk has not identified any other instances in which he communicated to Izett or any other employee of TEK that he may have been suffering from depression or any type of mental health disability.

TEK provides an employee handbook to its employees and the employee handbook contains a disciplinary policy.  Dkt. # 7-15, at 4.  The disciplinary policy plainly states that employment is at will and that TEK reserves the right to terminate an employee without cause or advance notice.  Id.  "However, [TEK] may administer progressive discipline to address incidents of unsatisfactory performance or conduct in the workplace."  Id.  The progressive discipline provides three steps that may be followed at the discretion of TEK:

• A first offense may call for a verbal warning.

• A next offense may be followed by a written warning.

• A further offense may lead to termination of employment.

Id.  The disciplinary policy further states that TEK "recognizes there are certain types of employee behavioral and performance problems that are serious enough to justify either disciplinary action or termination of employment and [TEK] reserves the right to bypass one or more of these steps." Id.

TEK states that Polk was disciplined numerous times during his employment for inappropriate conduct or unsatisfactory work performance.[1]  In 2007, Polk received a verbal warning for "combative behavior" against a co-worker.  Dkt. # 47-5, at 12.  On December 9, 2009, Polk sent an unprofessional e-mail to Izett in which he stated that another employee was "constantly jerking off" in his territory.  Dkt. # 70-1, at 2.  In March and April 2010, Polk was counseled multiple times concerning his poor work production and his attitude toward TEK clients.  Dkt. # 47-5, at 12-13. Polk was verbally warned following a customer complaint concerning delayed invoicing and his negative attitude toward the client, although he claims that this issue was the responsibility of another employee.  Dkt. # 47-5, at 13; Dkt. # 70-3, at 20-22.  TEK states that Polk was verbally counseled in June 2010 and given a verbal warning in July 2010 "regarding his attitude" and conduct toward his co-workers.  Dkt. # 47-5, at 13.  Izett issued a written warning to Polk in October 2010 for falsifying an expense report, because Polk attempted to charge TEK for a meal and drinks related

---

[1]     Plaintiff argues that many of the incidents of misconduct identified by defendant were simply listed in response to a discovery request, and defendant has not produced the underlying documents showing that he was actually disciplined.  Dkt. # 70, at 9.  For the purpose of this ruling, the Court will consider in its analysis only those incidents for which documentation has been produced to plaintiff.

to his brother's wedding.  Dkt. # 47-8.  Polk admits that the incident occurred, but he did not believe that it amounted to misconduct.  Dkt. # 70-3, at 33-35.

Izett counseled Polk on several occasions and his purpose in counseling Polk was "to help him to become a successful [TEK] employee."  Dkt. # 47-3.  However, Polk was having difficulty placing resources with ConocoPhillips (Conoco).  TEK previously lost its contract with Conoco that would have allowed it to place potential employees directly with Conoco, and TEK was required to go through a third party, Accenture, to conduct business with Conoco.  Dkt. # 70-3, at 18-19.  Although TEK's relationship with Conoco changed, TEK still did business with Conoco and it considered Conoco an important client.  Dkt. # 47-3, at 2; Dkt. # 76-1, at 2.  Polk was the account manager for the Bartlesville region, and he handled Conoco's account with TEK.  Dkt. # 70-3, at 18-20.  On October 26, 2010, Polk sent an e-mail to Mike Orr at Conoco, and he asked for a meeting with Orr about Conoco's procedure of using a third party to place potential employees with Conoco.  Dkt. # 47-9, at 2.  Orr responded rather bluntly that he had previously discussed the matter with Polk and that all requests to place employees with Conoco would continue to go through a third party.  Id. at 1.  On January 5, 2011, Polk sent an e-mail to "Jagdish" at Accenture questioning the length of time it was taking to interview TEK candidates for positions at Conoco.  Dkt. # 70-7, at 2.  Izett reviewed the e-mail and told Polk that it was "not a bad email," but he advised Polk that the e-mail was more direct than was appropriate under the circumstances.  Id.  Izett explained that Jagdish was an important contact for TEK and he suggested that expressing frustration with Jagdish could harm TEK's business.  Id.  Polk's relationship with Jagdish deteriorated because Polk was not working within the procedures put in place by Conoco.  Beginning on January 17, 2011, Polk and Jagdish exchanged e-mails about the placement of a TEK candidate with Conoco, and Polk's unwillingness

5

to follow Conoco's procedure was interfering the candidate's potential employment at Cococo. Dkt. # 47-13.   On January 25, 2011, Orr e-mailed Izett about ongoing problems with placing TEK candidates at Conoco. Dkt. # 47-10.   Polk had become quite vocal about his belief that Accenture was not passing on TEK candidates to Conoco's internal reviewers, but the data reviewed by Orr did not support Polk's claims. Id. at 1.   Polk had also expressed his disagreement with Conoco's arrangement because he was required to go through a competitor to comply with staffing requests for Conoco.[2] Id.; Dkt. # 70-3, at 23-24.   Orr believed that Polk was having difficulty working with Jagdish and that this was making it difficult to place TEK's candidates at Conoco. Dkt. # 47-10, at 1-2.   Izett spoke to Bryan Ptak, the national director of accounts for TEK, about the situation with Conoco, and Ptak sent out an e-mail stating that Izett was "reviewing personnel options" but that Ptak and Izett would "make a personnel decision to support Accenture at [Conoco]." Dkt. # 47-14, at 1.   Izett also wanted to meet with Jagdish to establish a business relationship with Accenture. Id. Izett states in his affidavit that he had to become personally involved with Accenture and Conoco to "repair" the harm caused by Polk's conduct, because it was important for TEK to have a good relationship with both entities. Dkt. # 47-3, at 3.

TEK terminated Polk's employment on March 25, 2011, and the reason listed for Polk's termination was "Rude/Unprofessional Behavior." Dkt. # 47-4.   Polk states that Izett informed him of the termination and told him that "I don't think you should work here anymore" because Izett did not think that Polk was "happy." Dkt. # 70-3, at 12.   Polk filed a charge of discrimination with the

---

[2]     In his response to defendant's motion for summary judgment, plaintiff states that Izett directed him to disregard Conoco's procedure. Dkt. # 70, at 11.   However, plaintiff's statement is not supported by the evidence he cites and the Court finds no evidence that Izett told or encouraged plaintiff to circumvent Accenture when fulfilling Conoco's staffing requests.

Equal Employment Opportunity Commission (EEOC) alleging a claim of disability discrimination. Dkt. # 70-4. The EEOC dismissed Polk's charge and sent him a right to sue letter. Dkt. # 47-20. On August 22, 2012, plaintiff filed this case in Tulsa County District Court alleging claims of disability discrimination under the ADA and the Oklahoma Anti-Discrimination Act, OKLA. STAT. tit. 25, § 1101 et seq. (OADA), and a claim of intentional infliction of emotional distress under Oklahoma law. TEK removed the case to this Court based on federal question jurisdiction. Dkt. # 2.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Defendant argues that plaintiff cannot establish a prima facie case of disability discrimination, because he has not shown that defendant was aware of his alleged disability.  Dkt. # 47, at 19.  Even if the Court finds that plaintiff can make a prima facie case of discrimination, defendant argues that there is no evidence supporting an inference that defendant's legitimate, non-discriminatory reason for terminating plaintiff's employment was pretextual.  Plaintiff argues that he was diagnosed with depression, anxiety, and attention deficit hyperactivity disorder (ADHD) and that these conditions qualify as disabilities under the ADA.  He also disputes defendant's claim that he was repeatedly disciplined for poor work performance and unprofessional conduct, and he argues that there is a genuine dispute as to whether defendant's legitimate, non-discriminatory reason for terminating his employment is pretextual.[3]

---

[3]    Defendant argues that plaintiff has failed to provide evidence in support of a separate failure to accommodate claim under the ADA.  Dkt. # 47.  Plaintiff misunderstands defendant's argument, and he argues that his failure to request an accommodation is irrelevant to his ADA claim.  Dkt. # 70, at 20.  Based on plaintiff's response to defendant's motion for summary judgment, there is no basis for the Court to conclude that plaintiff is asserting an independent ADA claim under a failure to accommodate theory.

**A.**

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Disability discrimination can be shown by direct or circumstantial evidence. See Reinhardt v. Albuquerque Public Schools Bd. of Educ., 595 F.3d 1126, 1131 (10th Cir. 2010). ADA discrimination cases based on circumstantial evidence are governed by the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).   Pursuant to this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  If he does so, "then the defendant must offer a legitimate, non-[discriminatory] reason for the employment action.  The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual."  Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1170 (10th Cir. 2006) (citations omitted).  In order to defeat a motion for summary judgment, the plaintiff must show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual-i.e., unworthy of belief."  Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).

Plaintiff argues that the Court should not apply the McDonnell/Douglas analysis, because he has offered direct evidence of disability discrimination.  Dkt. # 70, at 19-20.  He claims that Izett stated at the time of plaintiff's termination that "I don't think you should work here anymore, I don't think you're happy here."  Dkt. # 70-3, at 12.  "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption."  Hall v. United States

Dep't of Labor, Admin. Review Bd., 476 F.3d 847, 854 (10th Cir. 2007).  If any inference is required to suggest unlawful discrimination, the statement cannot be treated as direct evidence of discrimination.  Roberts v. Int'l Bus. Machines Corp., 733 F.3d 1306, 1308 (10th Cir. 2013).  "A statement that can plausibly be interpreted two different ways-one discriminatory and the other benign-does not directly reflect illegal animus, and, thus, does not constitute direct evidence." Hall, 476 F.3d at 855 (quoting Patten v. Wal-Mart Stores East, Inc., 300 F.3d 21, 25 (1st cir. 2002)).  Under this standard, Izett's statement does not constitute direct evidence of discrimination.  Plaintiff argues that he suffers from depression, and he claims that Izett's statement directly shows that Izett knew of plaintiff's disability and that he terminated plaintiff's employment because of plaintiff's depression.  However, Izett's use of the term "happy" could also reasonably refer to plaintiff's job satisfaction, rather than "unhappy" in the sense of one who is clinically depressed, and it is not at all apparent that Izett was attempting to refer to plaintiff's happiness in the sense of his general mental health.  Thus, Izett's statement cannot be treated as direct evidence of discrimination, and the Court will consider the statement as circumstantial evidence of discrimination.

Because there is no direct evidence of discrimination, the Court will apply the McDonnell/Douglas burden shifting analysis.  In order to establish a prima facie case under the ADA, a plaintiff must demonstrate:

> (1) that [he] is a disabled person within the meaning of the ADA; (2) that [he] is qualified, that is, [he] is able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that the employer terminated [his] employment under circumstances which give rise to an inference that the termination was based on [his] disability.

Morgan, 108 F.3d at 1324 (internal citations omitted).   The ADA defines disability as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1).  Impairments that are "transitory and minor" may not be used to support a claim of disability discrimination, and an impairment is transitory if it has an actual or expected duration of less than six months.  42 U.S.C. § 12103(3)(B).   The determination of whether a condition is transitory and minor must be made using an objective standard.  29 C.F.R. § 1630.15(f).  The mere fact that an employee applies for and receives FMLA leave does not show that the employer regarded an employee as disabled.  Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1219 (10th Cir. 2007).  In the Tenth Circuit, an ADA plaintiff has the burden to show "(1) he has an impairment that (2) substantially limits (3) a major life activity."  Smothers v. Solvay Chemicals, Inc., 740 F.3d 530, 545 (10th Cir. 2014).  The first and third requirements are matters of law for the Court to decide, but the second requirement is a question of fact that must be submitted to a jury if there is a genuine dispute.  Id.; Doebele v. Sprint/United Management Co., 342 F.3d 1117, 1129 (10th Cir. 2003).

Defendant's primary argument is that it could not have discriminated against plaintiff on the basis of his alleged disability, because it was not aware of plaintiff's conditions and a reasonable employer could not have perceived that plaintiff had any limitations.  The Court initially notes that plaintiff simply assumes that he has satisfied the first element of his prima facie case of disability discrimination, because he was at diagnosed with depression, anxiety, and ADHD in 1999 and "some time in 2006 or 2007."  Dkt. # 70, at 22.  However, plaintiff's statement in a deposition that

11

he was previously diagnosed with these conditions does not show that he qualifies as disabled for the purposes of the ADA.  Under the ADA, it is plaintiff's burden to establish that he is a "qualified individual with a disability."  Steele v. Thiokol Corp., 241 F.3d 1248, 1252 (10th Cir. 2001).  As the Court has noted, a person is disabled if he has "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  Depression, anxiety, and ADHD are not per se disabilities, and merely stating that he has received a diagnosis of one of these conditions does not establish that plaintiff is disabled under the ADA.  Johnson v. Sedgwick County Sheriff's Dep't, 461 Fed. App'x 756, 759 (10th Cir. Feb. 14, 2012); Evans v. Century Link Corp., 2013 WL 1284874 (D. Utah. Mar. 8, 2013).  After reviewing the motion for summary judgment and plaintiff's response, the Court directed the parties to submit supplemental briefing on the issue of whether plaintiff was disabled for the purposes of the ADA.  Dkt. # 79.  The parties have submitted supplemental briefing and evidence as directed by the Court.  Dkt. ## 80, 81.

Plaintiff has submitted an affidavit and medical records showing that he sought treatment for depression and anxiety.  In his affidavit, plaintiff states that his mother died in February 2010, and his mother's death "exacerbated [his] already severe depression."  Dkt. # 81-4, at 1.  He claims that he had "difficulty focusing and completing daily tasks, inability to sleep, severe neck and back pain, loss of appetite, loss of hope, anxiety attacks, and suicidal thoughts."  Id.  He states that could sleep only three to five hours a night while he was employed by TEK, and he had difficulty eating due to the severity of his depression.  Id. at 2.  He also claims that he had suicidal thoughts on a weekly basis.  Id.  However, not all of the statements in plaintiff's affidavit are supported by his medical records.  For example, none of plaintiff's treatment records shows that he reported having suicidal thoughts or that his mental health conditions were affecting his diet.  In April 2010, he reported that

12

"[s]leep is ok" and there are no further notes concerning his ability to sleep.  Dkt. # 81-2, at 1.

However, for the purpose of ruling on a motion for summary judgment, the Court cannot disregard

the statements in plaintiff's affidavit and the Court will view the evidence in a light most favorable

to plaintiff.  Based on plaintiff's affidavit, there is a genuine dispute of material fact as to whether

plaintiff's depression and anxiety limited his ability to eat, sleep, and care for himself, and these are

major life activities under the ADA.  There is also genuine dispute as to the severity of plaintiff's

limitations, but this issue must be resolved by a jury if plaintiff's ADA claim survives summary

judgment.  Based on the new evidence provided by plaintiff, the Court finds that plaintiff has

established for the purpose of a <u>prima</u> <u>facie</u> case of disability discrimination that he is a person with

a disability.

The new evidence provided by plaintiff does mean that defendant was aware of his alleged

disability and, to establish a <u>prima</u> <u>facie</u> case under the ADA, he must also produce evidence

supporting an inference that his termination was based on his disability.  <u>Smothers</u>, 740 F.3d at 544.

Defendant argues that there is no evidence that plaintiff ever notified defendant that he claimed to

be disabled, and there is no evidence of a causal connection between plaintiff's alleged disability

and his termination.  On December 9, 2009, plaintiff sent an e-mail to Izett stating that "the holidays

are always a time that I fight depression," but "I am fine . . . ."  Dkt. # 70-1, at 2.  Izett responded

that he was supportive of plaintiff, but Izett's response does not suggest that he viewed plaintiff as

having long-term depression.  <u>Id.</u> at 1.  On February, 2010, plaintiff sent an e-mail to Izett stating

that plaintiff was "struggling with his emotions" and that he was "a bit depressed" after the death

of his mother.  Dkt. # 70-2, at 1.  Plaintiff attached an article to the e-mail and the article describes

the grieving process following the loss of a parent.  <u>Id.</u> at 2. Plaintiff told Izett that he was having

trouble sleeping and that he was not eating enough, but he did not state that he was suffering from a permanent or long-term depression. Id. at 1. At most, plaintiff advised his employer that he suffered from temporary mental impairments of anxiety or depression, but plaintiff expressly disavowed any long-term depression. Izett testified in his deposition that he believed that plaintiff "was having a tough time as any -- as tough of a time as anybody would with the death of a parent." Dkt. # 70-9, at 18. Izett further testified that plaintiff never advised him that plaintiff was suffering from long-term depression or any other mental health condition such as ADHD or anxiety. Id. at 17-19. Plaintiff admits that he did not request an accommodation because he did not require one to perform his job. Dkt. # 70, at 11. He also stated in his deposition that he did not "typically advertise to people" that he suffered from depression. Dkt. # 47-1, at 16. Viewing the evidence in a light most favorable to plaintiff, the Court declines to resolve the case at the prima facie case level because plaintiff has offered some evidence that he conveyed to Izett that he was suffering from some form of depression. See Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1172 (10th Cir. 2007) (describing an employment discrimination plaintiff's burden at the prima facie case level as "so light that only the most baseless of claims fails to satisfy it"). However, the Court will consider evidence that plaintiff denied having a long term mental impairment as part of the pretext analysis.

Even if plaintiff could make a prima facie case of discrimination, defendant argues that it would still be entitled to summary judgment on plaintiff's ADA claim. Defendant states that plaintiff exhibited poor work performance and that his conduct was jeopardizing defendant's relationship with an important client, and he was terminated after plaintiff's performance failed to improve after numerous warnings. Dkt. # 47, at 20. "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not

14

at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1165 (10th Cir. 2007). Defendant has met its burden to state a legitimate, non-discriminatory reason for terminating plaintiff's employment.

At this stage of the proceeding, the burden shifts to plaintiff to show that defendant's explanation for terminating plaintiff's employment is pretextual. Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005); Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004). "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)). A plaintiff typically attempts to satisfy his or her burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan, 108 F.3d at 1323). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988).

Plaintiff argues that defendant's stated reason for terminating his employment is pretextual, because there is insufficient evidence that he was disciplined by his employer and that he was treated

15

differently than other similarly situated employees.  The Court has noted the lack of documentary evidence that certain verbal or written warnings were given, but this does not, by itself, render defendant's decision to terminate plaintiff's employment pretextual.  There is a clear record that plaintiff was warned that his conduct was damaging defendant's relationship with Conoco.  Plaintiff contacted Conoco directly, even though this violated Conoco's arrangement with defendant, and he was repeatedly warned that this was harming defendant's relationship with Conoco.  Dkt. # 47-3; Dkt. # 47-9; 47-10; Dkt. # 47-13; Dkt. # 47-14.   Izett had to step in and repair defendant's relationships with Accenture and Conoco following plaintiff's refusal to abide by Conoco's procedures.  Dkt. # 47-3, at 3.   Plaintiff claims that he was not disciplined under defendant's progressive disciplinary policy and that this supports his argument that defendant's stated reason for terminating his employment is pretextual. Dkt. # 70, at 24.  However, the disciplinary policy plainly states that:

> Employment with the Company is at will.  The Company reserves the right to terminate the employment relationship at any time, with or without cause, and with or without advance notice.  However, the company may administer progressive discipline to address incidents of unsatisfactory performance or conduct in the workplace.

Dkt. # 70-15. When an employer maintains a progressive disciplinary policy that is discretionary, evidence that the employer did not follow the discretionary policy is generally not evidence of pretext.  Lobato v. New Mexico Environmental Dep't, 733 F.3d 1283, 1291 (10th Cir. 2013); Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1120 (10th Cir. 2007).  In this case, plaintiff was not formally disciplined but he was repeatedly warned that his conduct was harming defendant's relationship with Conoco, and defendant's failure to expressly follow its progressive disciplinary policy is not evidence of pretext.

Plaintiff claims that a similarly situated employee, Aaron Sams, was given numerous warnings before Sams was fired, and plaintiff claims that he received no formal discipline before his employment was terminated. Dkt. # 70, at 17. The Tenth Circuit has recognized that a plaintiff may establish pretext by showing that "the employer 'treated [the plaintiff] differently from other similarly-situated employees who violated work rules of comparable seriousness' in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff." Swackhammer v. Sprint/United Management Co., 493 F.3d 1160, 1168 (10th Cir. 2007). An employee is similarly situated if the employee "deals with the same supervisor and is subject to the 'same standards governing performance evaluation and discipline." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1232 (10th Cir. 2000). "Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly situated." Green v. New Mexico, 420 F.3d 1189, 1194 (10th Cir. 2005). Plaintiff has the burden to produce evidence that employees are similarly situated. Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1121 n.4 (10th Cir. 2007). The evidence shows that Sams was counseled for "alcohol issues" and he was later fired after having sex with a customer's employee. Plaintiff was disciplined and later fired for disregarding a client's express instructions on repeated occasions. Although Sams had the same supervisor, he did not engage in conduct similar to plaintiff's, and the Court does not find that he is a similarly situated employee to plaintiff.

The Court also takes into account evidence showing that plaintiff failed to directly disclose his alleged disability to his employer. There are two e-mails in which plaintiff claimed to have mentioned his disability, but a consistent theme throughout the e-mails is that plaintiff downplays

the severity of his depression.  In the December 9, 2009 e-mail, plaintiff mentions that he seems to fight depression around the holidays but that he is "fine."  Dkt. # 70-1, at 2.  Izett responded that he was supportive of plaintiff and that he would talk to plaintiff if he needed additional support, but there is no evidence that plaintiff followed up with Izett about his holiday depression.  Id. at 1.   On February 21, 2010, plaintiff sent an e-mail to Izett stating that he was "a bit depressed" after the death of his mother, but "he was more stressed and overwhelmed than depressed."  Dkt. # 70-2, at 1.  The article attached to the e-mail concerns the temporary depression that is part of the grieving process after losing a parent.  Id. at 2.  The Court also notes the lack of a temporal connection between the e-mails and plaintiff's eventual termination, because the e-mails were sent more than a year before plaintiff's employment was terminated.  This detracts from any inference that plaintiff's statements in the e-mails about temporary depression were related to any adverse employment action.  Plaintiff also argues that Izett allegedly told plaintiff that he was being fired was because Izett believed that plaintiff was not "happy," and plaintiff claims that this is evidence of disability discrimination.  Viewed in light of other evidence, there is no basis to infer that Izett viewed plaintiff as suffering from long term depression or any other permanent mental health condition, and Izett's alleged statement is most reasonably viewed to reflect a belief that plaintiff was dissatisfied with his job, rather than depressed in a clinical sense.

Considering all of the evidence, the Court finds that plaintiff has not met his burden to show that there is a genuine dispute as to any material fact on the issue of pretext, and he has not shown that defendant's stated reason for terminating his employment was pretext for disability discrimination.  There is some evidence showing that plaintiff claimed to have holiday-related depression and that he was grieving after the death of his mother, but there is no evidence that he

ever advised defendant that he suffered from a permanent mental health impairment.  Plaintiff has also not produced evidence tending to show that he was treated differently than any other employee, and defendant has shown that it repeatedly warned plaintiff that his conduct was harming defendant's relationship with Conoco before it decided to fire plaintiff.  A reasonable factfinder could not find that defendant's legitimate, non-discriminatory reason for terminating plaintiff's employment is unworthy of belief, and defendant is entitled to summary judgment on plaintiff's ADA claim.[4]

**B.**

Defendant argues that plaintiff has no evidence showing that defendant engaged in extreme and outrageous conduct, and plaintiff cannot prevail on a claim of intentional infliction of emotional distress under Oklahoma law.  Dkt. # 47, at 24-25.  Plaintiff has not responded to this argument and it is possible that he has abandoned his intentional infliction of emotional distress claim.  Even though plaintiff has not argued in support of this claim, the Court will consider whether summary judgment is appropriate on the merits of his intentional infliction of emotional distress claim.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage.  See Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998).  The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id.  In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

---

[4]     The Court's decision on plaintiff's ADA claim also disposes of his claim under the OADA.  See Ray v. Oklahoma Heritage Home Care, Inc., 2013 WL 2368808, *4 (W.D. Okla. May 29, 2013), Zimmerman v. AHS Tulsa Regional Med. Ctr., LLC, 2011 WL 6122629, *13 (N.D. Okla. Dec. 8, 2011).  For the same reasons stated in regard to plaintiff's ADA claim, defendant is entitled to summary judgment on plaintiff's OADA claim.

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'  The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376.  To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)).  Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law).  If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the Court should submit the claim to the jury to determine whether the defendant's conduct could result in liability.  Id. The Court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress.  Id.

In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff.  See Computer Publications, 49 P.3d at 736 (claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move, and repeatedly change phone numbers); Miner v. Mid-America Door Co., 68 P.3d 212 (Okla. Civ. App. 2002) (employer's alleged

failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); Gabler v. Holder & Smith, Inc., 11 P.3d 1269 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was not extreme and outrageous when, inter alia, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); Zahorsky v. Community Nat'l Bank of Alva, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

Plaintiff has failed to show that defendant his employment was terminated because of his alleged disability and he has provided no evidence that he was treated differently than any other employee.  Instead, the evidence shows that plaintiff's employment was terminated after plaintiff was repeatedly warned that his conduct was harming defendant's relationship with Conoco and Accenture.  In fact, the situation escalated to the point that plaintiff's supervisor, Izett, became involved after plaintiff refused to comply with Conoco's procedures and plaintiff's behavior was making it difficult for defendant to place candidates with Conoco.  There is no evidence that plaintiff was harassed or treated differently because of an alleged disability, and no reasonable factfinder could conclude that defendant engaged in extreme and outrageous conduct.  Summary judgment should be entered in favor of defendant on plaintiff's intentional infliction of emotional distress claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, and Brief in Support (Dkt. # 47) is **granted**, and a separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine, and Brief in Support (Dkt. # 46); Defendant's Unopposed Motion to Move Trial Date (Dkt. # 51); Defendant's Motion to Strike Plaintiff's Claim for Damages Not Disclosed in Discovery, and Brief in Support (Dkt. # 55); Defendant TEKsystems, Inc.'s Unopposed Motion to Set Trial for a Date Certain (Dkt. # 83); and Defendant's Objections to Plaintiff's Deposition Counter-Designations (Dkt. # 84) are **moot**.

**DATED** this 28th day of March, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE